UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ADAM BARLEY,

Plaintiff,

-against-

EDUCATION PLUS CORPORATION d/b/a THE FAMILY FOUNDATION SCHOOL; EMMANUEL ARGIROS a/k/a MICHAEL ARGIROS; CINDY ARGIROS a/k/a CINDY RAY a/k/a CINDY RAY ARGIROS; BETTY ARGIROS; MICHAEL LOSICCO a/k/a "ROXY"; CHRISTOPHER STEIN; EDWARD ANDERSON; RANDY WHITING; JOSEPH PETRIELLA; MATTHEW DINGLE; THE EASTRIDGE CORPORATION a/k/a HIGH RIDGE PROPERTY COMPANY, Inc.; LACKAWANNA COLLEGE; NATIONAL ASSOCIATION OF THERAPEUTIC SCHOOLS AND PROGRAMS; NBT BANK, N.A.; NBT BANCORP INC.; THE HANCOCK HERALD; VILLAGE OF HANCOCK, NEW YORK; VILLAGE OF HANCOCK POLICE DEPARTMENT; DELAWARE COUNTY SHERIFF'S OFFICE; COUNTY OF DELAWARE, NEW YORK; DELAWARE COUNTY BOARD OF SUPERVISORS; KASOS CO FAMILY LP; KASOS ENTERPRISES LLC; CHAPEL HILL LAND HOLDINGS LLC; and K9-5 INC.

Defendants.

---

Civil Action No.: 3:26-cv-1493-AJB-ML

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VILLAGE OF HANCOCK, NEW YORK, AND HANCOCK VILLAGE POLICE DEPARTMENT'S MOTION <u>TO DISMISS THE COMPLAINT</u>**

WHITEMAN OSTERMAN & HANNA LLP
One Commerce Plaza
Albany, New York, 12260
Telephone: (518) 487-7600
okiley@woh.com
aseitelman@woh.com

*Of Counsel*:
Oriana L. Kiley, Esq.
Anna V. Seitelman, Esq.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... i

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

STANDARD OF REVIEW ..... 4

ARGUMENT ..... 4

POINT I THE POLICE DEPARTMENT IS NOT A PROPER PARTY TO THIS ACTION ..... 4

POINT II ALL OF PLAINTIFF'S CLAIMS AGAINST THE VILLAGE DEFENDANTS ARE TIME-BARRED ..... 5

A. *The Civil RICO Claims Are Barred by the Four-Year Limitations Period* ..... 6

B. *The Section 42 U.S.C. § 1983 Claim Is Barred by New York's Three-Year Period* ..... 8

C. *The Trafficking Claims Are Barred by the Ten-Year Period of Section 1595(c)* ..... 9

D. *The State Common-Law Claim Is Barred Under General Municipal Law § 50-i* ..... 11

E. *The Social Services Law § 483-bb Claim Is Untimely* ..... 11

F. *Fraudulent Concealment Does Not Toll Any Claim* ..... 12

G. *The Discovery Rule Does Not Delay Accrual of the Federal Claims* ..... 13

POINT III THE STATE-LAW CLAIMS ARE BARRED FOR FAILURE TO SERVE A NOTICE OF CLAIM ..... 14

POINT IV THE COMPLAINT FAILS TO STATE A CIVIL RICO CLAIM AGAINST THE VILLAGE DEFENDANTS ..... 15

A. *Plaintiff Lacks RICO Standing Because She Alleges No Business-or-Property Injury* ..... 15

B. *A Municipality Cannot Be Liable Under Civil RICO* ..... 17

C. *Plaintiff Fails to Properly Plead the Elements of a RICO Claim* ..... 18

D. *The RICO Conspiracy Claim Fails* .... 23

POINT V THE COMPLAINT FAILS TO STATE A TRAFFICKING VICTIMS PROTECTION ACT CLAIM .... 24

A. *Plaintiff Fails to Plead Participation in a Venture and Knowing Benefit* .... 24

POINT VI PLAINTIFF FAILS TO PROPERLY PLEAD A 42 U.S.C. SECTION 1983 CLAIM .... 25

A. *The Village Defendants Did Not Owe Plaintiff Any Duty to Protect Against Private Harm* .... 25

B. *The Complaint Pleads No Monell Policy or Custom* .... 27

POINT VII THE STATE-LAW CLAIMS FAIL TO STATE A CLAIM .... 28

A. *The Social Services Law § 483-bb Claim Does Not Apply and Fails to State a Claim* .... 28

B. *The Negligence Claims Fails Because No Special Duty Is Owed Under the Public Duty Doctrine* .... 30

C. *Governmental-Function Immunity Bars the Negligence Claim* .... 31

D. *There Is No Private Right of Action for Failure to Report* .... 31

CONCLUSION .... 32

# TABLE OF AUTHORITIES

## Cases

*A.A. v. Omnicom Grp.*, 834 F. Supp. 3d 419 (S.D.N.Y. 2026) .................................................... 25

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir.2007) .................................................................... 12

*Accord Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................. 17

*Aggarwal v. N.Y.C. Health & Hosp. Corp.*, 2000 WL 172787 (S.D.N.Y. Feb. 10, 2000) ........... 14

*Applewhite v. Accuhealth*, Inc., 21 N.Y.3d 420 (2013) .......................................................... 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 4

*Baker v. Willett*, 42 F. Supp. 2d 192 (N.D.N.Y. 1999) ....................................................... 4, 5

*Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) .................................................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 4

*Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995) ................................................................. 7, 8

*Boucher v. Sears*, No. 89-CV-1353, 1995 WL 283742 (N.D.N.Y. May 8, 1995) ........................ 24

*Caravella v. Hearthwood Homes Inc.*, No. 05-CV-1529 DRH, 2007 WL 2886507 (N.D.N.Y. Sept. 27, 2007) ................................................................................ 19

*Carter v. Broome Cnty.*, 394 F. Supp. 3d 228 (N.D.N.Y. 2019) ............................................. 14

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999) ......................... 23

*Conte v. County of Nassau*, 596 F. App'x 1 (2d Cir. 2014) .....................................................11

*Corcoran v. N.Y. Power Auth.*, 202 F.3d 530 (2d Cir.1999) .................................................... 12

*Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171 (S.D.N.Y. 2020) ................................ 17, 18

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013) ............................................... 18, 19

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F. Supp. 449 (S.D.N.Y. 1996) ............... 19, 21

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ........................... 25, 26

*Dicenzo v. City of Saratoga Springs, No*. 1:24-CV-01513 (AMN/DJS), 2026 WL 698303 (N.D.N.Y. Mar. 12, 2026) ........................................................................... 18, 20

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) ............................. 23

*Doe v. Town of Greenwich*, 422 F. Supp. 3d 528 (D. Conn. 2019) .......................................... 27

*Doe v. Warren & Baram Mgmt. LLC*, No. 20-CV-9522 (ER) (VF), 2024 WL 2941222 (S.D.N.Y. May 3, 2024), *report and recommendation adopted sub nom. Doe v. Baram*, No. 20-CV-9522 (ER), 2024 WL 3342602 (S.D.N.Y. July 9, 2024)...................................... 10

*Dolgas v. Wales*, 215 A.D.3d 51 (3d Dep't 2023)........................................................................ 9

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ........................................................ 26

*Ellul v. Congregation of Christian Bros*., 774 F.3d 791 (2d Cir. 2014) ...................................... 13

*Ferreira v. City of Binghamton*, 975 F.3d 255 (2d Cir. 2020)............................................. 30, 31

*First Cap. Asset Mgmt., Inc. v. Satinwood*, Inc., 385 F.3d 159 (2d Cir. 2004) ..................... *passim*

*First Nationwide Bank v. Gelt Funding Corp*., 27 F.3d 763 (2d Cir. 1994) ............................... 22

*Gandarilla v. Sanchez*, 2012 WL 3525607 (S.D.N.Y. Aug. 15, 2012) ....................................... 14

*Garrasi v. Wells Fargo Bank, N.A*., No. 121CV202GLSTWD, 2022 WL 958092 (N.D.N.Y. Mar. 30, 2022), *aff'd*, No. 22-921, 2024 WL 191802 (2d Cir. Jan. 18, 2024)........... 6

*Ghartey v. St. John's Queens Hosp*., 869 F.2d 160 (2d Cir. 1989)................................................ 6

*Gingras v. Think Fin., Inc*., 922 F.3d 112 (2d Cir. 2019)...................................................... 17, 18

*Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789 (2d Cir. 1999)............................ 14

*Hecht v. Commerce Clearing House*, 897 F.2d 21 (2d Cir. 1990) .................................. 17, 21, 23

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ..................................................... 16, 21

*Henry ex rel. Henry v. City of New York*, 94 N.Y.2d 275 (1999) ..................................................11

*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) ............................................................................ 9

*Holmes v. Sec. Inv'r Prot. Corp*., 503 U.S. 258 (1992) .......................................... 16, 21, 22

*Horn v. Med. Marijuana, Inc*., 80 F.4th 130 (2d Cir. 2023)......................................................... 15

*Howell v. City of New York*, 39 N.Y.3d 1006 (2022) ................................................................ 30

*In re Merrill Lynch Ltd. Partnerships Litig*., 154 F.3d 56 (2d Cir. 1998)....................................... 8

*Jackson v. Cnty. of Ulster*, No. 1:24-CV-00203 (MAD/ML), 2025 WL 904710 (N.D.N.Y. Mar. 25, 2025)................................................................................................11

*Jones v. Town of E. Haven*, 691 F.3d 72 (2d Cir. 2012) ............................................................ 28

*Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101 (2d Cir. 2023)........................................ 8, 9

*Kitler v. Church of Jesus Christ of Latter-Day Saints*, No. 1:24-CV-01071 (AMN/PJE), 2025 WL 2209870 (N.D.N.Y. Aug. 4, 2025) ........................................................................ 6, 10

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997).......................................................................... 12

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ................................................ 7, 12, 13

*Kovit v. Estate of Hallums*, 4 N.Y.3d 499 (2005) .......................................................................... 31

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999) ........................................................................................................................ 17

*Lauer v. City of New York*, 95 N.Y.2d 95 (2000) ................................................................... 30, 31

*Laverpool v. N.Y.C. Transit Auth.*, 760 F. Supp. 1046 (E.D.N.Y. 1991) ...................................... 24

*Leland v. Moran*, 100 F. Supp. 2d 140 (N.D.N.Y. 2000) ........................................................... 4, 5

*Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645 (S.D.N.Y. 2024)................................. 25, 29

*Loria v. Town of Irondequoit*, 775 F. Supp. 599 (W.D.N.Y. 1990) ................................................ 5

*M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413 (S.D.N.Y. 2017)....................................... 27

*Marroccolo v. Coddington,* No. 6:24-CV-1091 (GTS/MJK), 2024 WL 4198365 (N.D.N.Y. Sept. 16, 2024), *report and recommendation adopted*, No. 6:24-CV-1091 (GTS/MJK), 2025 WL 396313 (N.D.N.Y. Feb. 5, 2025) ........................................................................................ 9

*Matican v. City of New York*, 524 F.3d 151 (2d Cir. 2008) ......................................................... 26

*McLean v. City of New York*, 12 N.Y.3d 194 (2009)............................................................... 31, 32

*Med. Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025)............................................................ *passim*

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).................................... 27

*Mueller v. Deutsche Bank Aktiengesellschaft*, 185 F.4th 307 (2d Cir. 2026).......................... 24, 29

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253 (S.D.N.Y. 2006)........................................................................................................................ 24

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009) ........................ 26

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002)........................................................8, 11

*Perez v. City of New York*, 2007 WL 14486 (E.D.N.Y. Jan. 3, 2007) .......................................... 15

*Pisello v. Town of Brookhaven*, 933 F. Supp. 202 (E.D.N.Y. 1996) ............ 28

*Rankel v. Town of Somers*, 999 F. Supp. 2d 527 (S.D.N.Y. 2014) ............ 10

*Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist*., 89 F. Supp. 3d 450 (E.D.N.Y. 2015) ............ 26, 27

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ............ 19

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) ............ 15

*Roeder v. J.P. Morgan Chase & Co*., 523 F. Supp. 3d 601 (S.D.N.Y. 2021) ............ 6

*Rotella v. Wood*, 528 U.S. 549 (2000) ............ 7

*S.J. v. Choice Hotels Int'l*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ............ 28

*S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176 (E.D.N.Y. 2014) ............ 6, 9

*Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) ............ 20

*Simmons v. Reich*, No. 20-4114, 2021 WL 5023354 (2d Cir. Oct. 29, 2021) ............ 6, 8

*Soybel v. City of New York,* No. 21-cv-1846, 2024 WL 5482682 (E.D.N.Y. Mar. 15, 2024) ............ 17, 18

*Sperber v. Boesky*, 849 F.2d 60 (2d Cir. 1988) ............ 21

*Tango v. Tulevech*, 61 N.Y.2d 34 (1983) ............ 31

*Tuff v. Vill. of Yorkville Police Dep't*, 2017 WL 401241 (N.D.N.Y. Jan. 30, 2017) ............ 4, 5

*United States v. Priv. Sanitation Indus. Ass'n*, 793 F. Supp. 1114 (E.D.N.Y. 1992) ............ 24

*Valdez v. City of New York*, 18 N.Y.3d 69 (2011) ............ 30

*Veal v. Geraci*, 23 F.3d 722 (2d Cir. 1994) ............ 13

*Velez v. Sanchez*, 693 F.3d 308 (2d Cir. 2012) ............ 28

*Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230 (S.D.N.Y. Apr. 22, 2019) ............ 8

*Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171 (S.D.N.Y. 2003) ............ 5

*Winnie v. Sinagra*, No. 1:24-CV-00940 (BKS/PJE), 2025 WL 2391723 (N.D.N.Y. Aug. 18, 2025) ............ 17, 18, 21

*Wood v. Inc. Vill. of Patchogue*, 311 F. Supp. 2d 344 (E.D.N.Y. 2004) ............ 20, 21

*Zerilli-Edelglass v. N.Y.C. Transit Auth*., 333 F.3d 74 (2d Cir. 2003) ............ 10

*Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012)................ 16

**Statutes**

18 U.S.C. § 1595 ........................................ 3, 9, 24, 29

18 U.S.C. § 1961(1) ........................................ 20, 21

18 U.S.C. § 1961(3) ........................................ 19

18 U.S.C. § 1962 ........................................ 18

18 U.S.C. § 1962(c) ........................................ 3, 19, 20

18 U.S.C. § 1962(d) ........................................ 3, 23

18 U.S.C. § 1964(c) ........................................ 15, 16, 21

42 U.S.C. § 1983 ........................................ *passim*

N.Y. Gen. Mun. Law § 50-e (McKinney) ........................................ 14

N.Y. Gen. Mun. Law § 50-i ........................................ 11

N.Y. CLS Soc. Serv. § 483-bb ........................................ *passim*

**Rules**

CPLR § 208 ........................................ 6, 9, 11

CPLR § 214(5) ........................................ 8

CPLR § 214-g ........................................ 9

Fed. R. Civ. P. 12(b)(6) ........................................ 1, 4

Fed. R. Civ. P. 17 ........................................ 4

## **PRELIMINARY STATEMENT**

Defendants Village of Hancock, New York (the "Village") and the Hancock Village Police Department (the "Police Department," and together with the Village, the "Village Defendants"), through their attorneys, Whiteman Osterman & Hanna LLP, respectfully submit this Memorandum of Law in support of their Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), every claim asserted against them in the Verified Complaint (the "Complaint") of Plaintiff Adam Barley ("Plaintiff"). The Complaint tells the story of abuse Plaintiff alleges he suffered at a private boarding school more than two decades ago, at the hands of the school's own staff. The Village Defendants' only alleged role is that their police department failed to police that private institution. On that thin footing, Plaintiff seeks to hold a municipality liable under federal racketeering and trafficking statutes, the Constitution, and New York tort law. Each claim fails to state a claim, and Plaintiff's Complaint must be dismissed against the Village Defendants in its entirety.

As a threshold matter, the Police Department is not a legal entity separate from the Village and cannot be sued at all, so the claims against it should be dismissed for that reason alone, with any surviving claim treated as one against the Village. In any event, every claim against the Village Defendants is time-barred. The conduct Plaintiff attributes to the Village arises entirely from his 2000–2003 enrollment as a minor, yet the action was not commenced until more than two decades later, on August 3, 2026. As explained in detail below, measured from each claim's accrual date, and extended by every infancy toll the law allows, each of Plaintiff's claims expired *years* before this suit commenced. Neither the separate-accrual rule, the discovery rule, equitable tolling, nor the Child Victims Act revive any of them because each depends on facts the Complaint does not, and cannot, allege against a municipality accused only of inaction.

The state-law claims further fail for the independent, threshold reason that Plaintiff never served the notice of claim that New York law makes a condition precedent to suing a municipality in tort.

Finally, Plaintiff's claims fail on the merits as well. A municipality cannot be liable for damages under Racketeer Influenced and Corrupt Organizations Act ("RICO"); and Plaintiff pleads no business-or-property injury, no operation or management of the enterprise, no predicate act by the Village, and no proximate cause, as required for a RICO cause of action. The trafficking claims require participation in a venture and a knowing, venture-related benefit that the Complaint does not allege. New York's public duty doctrine and governmental-function immunity bar the negligence claims, and there is no private right of action against a municipality for failure to report.

For these reasons, and as set forth below, the Court should dismiss all claims against the Village Defendants with prejudice.

## STATEMENT OF FACTS

This action arises from events alleged to have occurred more than two decades ago, during Plaintiff's enrollment at a private school, and reaches the Village only at the far periphery of the Complaint's sprawling allegations. Plaintiff alleges that he attended the Family Foundation School (hereinafter "FFS") from September 2000 through 2003 and was enrolled as a minor (Dkt. No. 1 ["Compl."], ¶ 9). He alleges that during that enrollment he was subjected to abuse and not provided promised treatment by agents and employees of the school (Compl., ¶ 18). According to the Complaint, the alleged enterprise operated "through the [Family Foundation School] institution as its primary vehicle," and the school itself was owned, operated, and controlled by the Argiros family (Compl., ¶¶ 26, 49).

The Village is a municipal corporation organized under the laws of New York (Compl., ¶ 43). The Police Department is the law enforcement agency of the Village of Hancock (Compl., ¶ 43). The Complaint's allegations against the Village Defendants are that they "knowingly protected the enterprise from law enforcement scrutiny" in exchange for financial and political benefits, and that its police failed to investigate FFS (Compl., ¶¶ 43, 92). The Complaint frames those benefits as flowing from the Argiros family's asserted control of a substantial concentration of the Village's commerce (Compl., ¶¶ 53-56). The abuse and lack of treatment are attributed to the school's staff, not to the Village Defendants (Compl.,¶¶ 13-14, 18).

The injuries Plaintiff traces to these events were sustained during his enrollment, and the economic losses he now pleads are recent. He alleges that his entry into his profession was delayed by years due to being held at FFS until he was nearly twenty years old, and that a manufactured "sex addict" pathology consumed years of his early adulthood in twelve-step sexual-addiction meetings, permanently depressing his earning capacity in his trade, as consequences of the racketeering activity and of injuries inflicted from his tenure at FFS (Compl., ¶ 96). He further alleges that he discovered the enterprise's true nature through the 2025 Geer criminal proceedings (Compl., ¶ 81).

Plaintiff commenced this action on August 3, 2026 (Dkt. No. 1). The Complaint asserts six counts against the Village: (1) a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. § 1962(c) (Count I); (2) a RICO conspiracy under 18 U.S.C. § 1962(d) (Count II); (3) a claim under 18 U.S.C. § 1595 as a knowing beneficiary of the sex trafficking venture (Count IV); (4) a claim under NY CLS Soc. Serv. § 483-bb (Count VIII); (5) for civil rights violations under 42 U.S.C. § 1983 (Count XII); and (6) negligence per se/failure to report child abuse (Count XIII).

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In testing plausibility, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Claims sounding in fraud, including the fraud-based predicate acts underlying a civil RICO claim, must be pleaded with the particularity Rule 9(b) demands. *First Cap. Asset Mgmt., Inc. v. Satinwood*, Inc., 385 F.3d 159, 178 (2d Cir. 2004).

**ARGUMENT**

**POINT I**

**THE POLICE DEPARTMENT IS NOT A PROPER PARTY TO THIS ACTION**

At the outset, the claims against the Police Department should be dismissed because under New York law, a village police department is not a legal entity capable of being sued.

Pursuant to Fed. R. Civ. P. 17, New York law governs the capacity of the police department to sue or be sued. A police department "is an administrative arm of the municipal corporation" and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999); *see Tuff v. Vill. of Yorkville Police Dep't*, 2017 WL 401241, at *3 (N.D.N.Y. Jan. 30, 2017) (dismissing all claims against a village police department as a non-suable entity); *Leland v. Moran*, 100 F. Supp. 2d 140, 145–46 (N.D.N.Y. 2000) (dismissing a village police department as "redundant"

where both the village and its department were named, because "the Village is the real party in interest."); *see also Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("under New York Law, administrative arms of a municipality, such as the Village of Goshen Police Department, do not have a legal identity separate and apart from the municipality, and cannot sue or be sued."); *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990).

Here, The Village of Hancock is a municipal corporation organized under New York law (Compl., ¶ 45). The Police Department is merely its administrative arm. Because the Village is already a party to this action, the claims against the Police Department are redundant and should be dismissed on that basis alone. *See Tuff v. Vill. of Yorkville Police Dep't*, 2017 WL 401241, at *3; *Leland v. Moran*, 100 F. Supp. 2d at 145–46; *Baker v. Willett*, 42 F. Supp. 2d at 198. To the extent any claim against the Police Department is not dismissed outright, it "will be deemed a suit against the Village." *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d at 176.

## POINT II

## ALL OF PLAINTIFF'S CLAIMS AGAINST THE VILLAGE DEFENDANTS ARE TIME-BARRED

Every count Plaintiff asserts against the Village Defendants arises from conduct alleged to have occurred during his enrollment at FFS from September 2000 through 2003 (Compl., ¶ 9). This action commenced on August 3, 2026 (Dkt. No. 1). The events underlying each count are alleged to have occurred during that enrollment, more than two decades before suit (Compl., ¶¶ 13-16, 19). Each governing limitations period, measured from accrual and extended by every toll the law allows a claim that accrues in infancy, expired years before suit. Because untimeliness appears on the face of the Complaint, each count against the Village Defendants should be dismissed.

"[W]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Kitler v. Church of Jesus Christ of Latter-Day Saints*, No. 1:24-CV-01071 (AMN/PJE), 2025 WL 2209870, at *6 (N.D.N.Y. Aug. 4, 2025) (internal quotation marks and citations omitted); *see Ghartey v. St. John's Queens Hosp*., 869 F.2d 160, 162 (2d Cir. 1989). Where claims "are *prima facie* time-barred, the burden is on the plaintiff to 'plausibly alleg[e] that they fall within an exception to the applicable statute of limitations.'" *Id*. (quoting *Roeder v. J.P. Morgan Chase & Co*., 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021)).

### *A. The Civil RICO Claims Are Barred by the Four-Year Limitations Period*

Plaintiff's civil RICO claims (Counts I and II) are untimely because they were filed well outside the four-year limitations period. Civil RICO is governed by a four-year period that accrues when a plaintiff discovers, or should have discovered, the injury caused by the predicate RICO violations. *Simmons v. Reich*, No. 20-4114, 2021 WL 5023354, at *2 (2d Cir. Oct. 29, 2021) (summary order); *Garrasi v. Wells Fargo Bank, N.A*., No. 121CV202GLSTWD, 2022 WL 958092, at *2 (N.D.N.Y. Mar. 30, 2022), *aff'd*, No. 22-921, 2024 WL 191802 (2d Cir. Jan. 18, 2024). The injuries Plaintiff traces to the alleged enterprise (the abuse he suffered and the lack of treatment) are alleged to have occurred during his 2000–2003 enrollment, for part of which he was a minor (Compl., ¶ 9). Because those claims partially accrued during his infancy, New York's infancy toll extended the period only to three years after he reached the age of eighteen, or at a minimum in 2001.[1] CPLR § 208; *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 192 (E.D.N.Y. 2014). Even measured from accrual during Plaintiff's minority, the four-year period lapsed by over twenty years before suit.

[1]The Complaint provides that Plaintiff was born on September 20, 1983 (Compl. ¶ 9). Based on the pleading, we assume he turned eighteen years old in 2001.

Plaintiff cannot avoid this result by asserting that the period ran only from his purported 2025 discovery of the enterprise's true nature through the Geer criminal proceedings (Compl., ¶ 81). As specifically addressed by the Supreme Court and Second Circuit, accrual of a civil RICO claim turns on discovery of the *injury*, not discovery of a legal theory. *Rotella v. Wood*, 528 U.S. 549, 559 (2000) ("in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock . . .. We see no good reason for accepting a lesser degree of responsibility on the part of a RICO plaintiff."); *see also Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012) ("This Court's decisions in RICO cases have followed *Rotella*'s plain language on this point"). The injuries underlying the RICO counts were sustained during Plaintiff's enrollment, and the four-year clock began then (Compl., ¶ 96). As such, both RICO counts against the Village are therefore time-barred.

Plaintiff's more recent economic losses do not restart the RICO clock either because they are continuing consequences of his original injury rather than new and independent injuries. The Second Circuit's separate-accrual rule begins a new four-year period each time a plaintiff discovers a *new* injury caused by a predicate act, but it applies only if the alleged RICO violation results in a new and independent injury, separate and distinct from the original injury. *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988). The Second Circuit enforced that limit in *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995), holding that losses that "resulted from" the plaintiff's own continued use of a defective product "were not independent from that original injury" and therefore did not start a new limitations period. *Id*. The Court held that "non-independent injuries will not cause a new limitations period to accrue," declining "to give plaintiffs the power to restart the limitations clock in this way." *Id*. Even a timely plaintiff may recover only for injuries discovered

or discoverable within the four-year window before suit; later losses that "continue to flow from the underlying RICO violations" do not enlarge that window. *Id*. If the subsequent injuries are "derivative of" an earlier incident, the new injuries cannot be considered "new and independent." *Simmons v. Reich*, No. 20-4114, 2021 WL 5023354, at *3 (2d Cir. Oct. 29, 2021) (holding that later foreclosure, eviction, and "continuing payment" injuries are derivative "symptoms," not "new and independent" injuries); *In re Merrill Lynch Ltd. Partnerships Litig*., 154 F.3d 56, 58 (2d Cir. 1998) (concluding that, where the alleged scheme was "fraudulent at the outset," the defendants' later efforts to conceal the initial fraud or collect more money were "simply a part of the alleged scheme" and "cannot be viewed as a separate and distinct fraud creating new injuries"); *Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230, at *6 (S.D.N.Y. Apr. 22, 2019) (stating that claimants "cannot use independent, new predicate acts as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.").

Plaintiff's alleged destruction of the early years of his professional career and permanent depression in his earning capacity in his trade, are pleaded as *consequences* of the racketeering activity (Compl., ¶ 96). Those losses are the continuing effects of the same injury, not new injuries caused by any new predicate act, and certainly not by any new act of the Village Defendants (Compl., ¶ 96). The separate-accrual rule therefore does not save the RICO counts, which must be dismissed in their entirety.

### ***B. The Section 42 U.S.C. § 1983 Claim Is Barred by New York's Three-Year Period***

Plaintiff's 42 U.S.C. § 1983 claim (Count XII) is untimely under the three-year period New York supplies for such claims. A Section 1983 claim arising in New York borrows the three-year limitations period of CPLR § 214(5). *Kane v. Mount Pleasant Cent. Sch. Dist*., 80 F.4th 101, 108 (2d Cir. 2023); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see also Dolgas v.*

*Wales*, 215 A.D.3d 51, 57 (3d Dep't 2023). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *Marroccolo v. Coddington,* No. 6:24-CV-1091 (GTS/MJK), 2024 WL 4198365, at *2 (N.D.N.Y. Sept. 16, 2024), *report and recommendation adopted*, No. 6:24-CV-1091 (GTS/MJK), 2025 WL 396313 (N.D.N.Y. Feb. 5, 2025).

Here, Plaintiff's alleged constitutional injury, the abuse he suffered during his 2000–2003 enrollment, began to accrue while he was a minor (Compl., ¶¶ 9, 140). New York's infancy toll, CPLR § 208, extended that period only until three years after Plaintiff turned eighteen, and the action was not commenced until August 3, 2026. *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 192 (E.D.N.Y. 2014). The Child Victims Act does not rescue the claim, because New York courts have held that CPLR § 214-g does not revive § 1983 claims. This was expressly held by the Second Circuit in *Kane v. Mount Pleasant Cent. Sch. Dist.*:

> [W]e hold that [CPLR] Section 214-g, as a tort-specific provision, is not a revival or tolling statute closely related to the residual personal injury statute of limitations applicable to a Section 1983 or Title IX claim. Accordingly, the district courts correctly concluded that the federal claims brought by [the plaintiffs], which had accrued more than three years prior to the filing of their respective lawsuits, were time barred under Section 214(5) and properly dismissed those claims. 80 F.4th 101, 111 (2d Cir. 2023).

Count XII is therefore time-barred as against the Village Defendants.

### *C. The Trafficking Claims Are Barred by the Ten-Year Period of Section 1595(c)*

Plaintiff's trafficking claim (Count IV) is untimely under the Trafficking Victims Protection Reauthorization Act ("TVPRA")'s own limitations provision. The statute of limitations for the TVPRA is the later of "10 years after the cause of action arose" or "10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." 18 U.S.C. § 1595(c)(1)-(2); *Kitler v. Church of Jesus Christ of Latter-Day Saints*, No. 1:24-CV-01071

(AMN/PJE), 2025 WL 2209870, at *8 (N.D.N.Y. Aug. 4, 2025). For purposes of the TVPRA, a cause of action accrues "on the last date the wrongful conduct occurs" because the statute "involves a continuing tort, and ... [ ] a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern." *Kitler*, 2025 WL 2209870, at *6 (internal quotation marks and citations omitted). Plaintiff was a minor for part of the time he was enrolled at the school from 2000 through 2003, and commenced this action on August 3, 2026, well beyond ten years after the latest date he reached majority.

Equitable tolling does not close that gap. Plaintiff has "the burden of pleading facts sufficient to establish that the statutes of limitations should be tolled." *Kitler*, 2025 WL 2209870, at *6 (internal quotation marks and citations omitted). Equitable tolling of the statute of limitations "is only appropriate in rare and exceptional circumstances, in which [a plaintiff] is prevented in some extraordinary way from exercising his rights." *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 540 n.22 (S.D.N.Y. 2014) (*citing Zerilli-Edelglass v. N.Y.C. Transit Auth*., 333 F.3d 74, 80 (2d Cir. 2003)). When considering whether equitable tolling is appropriate, a district court must consider "whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80 (internal quotations omitted). "[G]eneralized allegations of fear of retaliation" are not sufficient to establish extraordinary circumstances warranting equitable tolling. *Doe v. Warren & Baram Mgmt. LLC*, No. 20-CV-9522 (ER) (VF), 2024 WL 2941222, at *4 (S.D.N.Y. May 3, 2024), *report and recommendation adopted sub nom. Doe v. Baram*, No. 20-CV-9522 (ER), 2024 WL 3342602 (S.D.N.Y. July 9, 2024) (internal quotation marks and citations omitted). Here, Plaintiff

pleads no conduct by the Village Defendants that prevented him from suing within the statutory period (Compl., ¶¶ 82, 84). Count IV is therefore untimely.

### *D. The State Common-Law Claim Is Barred Under General Municipal Law § 50-i*

Plaintiff's negligence claim (Count XIII) is barred by the short municipal limitations period. A tort action against a municipality is subject to the one-year and 90-day limitation period of General Municipal Law § 50-i. *Jackson v. Cnty. of Ulster*, No. 1:24-CV-00203 (MAD/ML), 2025 WL 904710, at *9 (N.D.N.Y. Mar. 25, 2025) (citing *Conte v. County of Nassau*, 596 F. App'x 1, 5 (2d Cir. 2014) (summary order); see *Henry ex rel. Henry v. City of New York*, 94 N.Y.2d 275 (1999). Where a claim accrues during infancy, CPLR 208 tolls the period for the "period of disability," but even the more generous three-year personal-injury period runs only until three years after the plaintiff's eighteenth birthday. *Pearl v. City of Long Beach*, 296 F.3d 76, 84 (2d Cir. 2002). Plaintiff's negligence-per-se claim arise from his 2000–2003 enrollment (Compl., ¶ 9). This action was commenced on August 3, 2026, long after any infancy toll on a claim accruing in 2000–2003 could have run. Count XIII is therefore time-barred.

### *E. The Social Services Law § 483-bb Claim Is Untimely*

Even under the fifteen-year period Plaintiff invokes, the Social Services Law § 483-bb (Count VIII) claim against the Village Defendants is untimely. Social Services Law § 483-bb, as amended in 2021, affords a fifteen-year period subject to statutory suspensions based on trauma, disability, lack of knowledge, and intimidation. The conduct the Complaint attributes to the Village Defendants arises from Plaintiff's 2000–2003 enrollment in the school (Compl., ¶ 9). The action was commenced on August 3, 2026. A fifteen-year period measured from that enrollment lapsed in 2018, well before this suit commenced. None of the statutory suspensions of Social Services

Law § 483-bb apply here, as Plaintiff identifies no conduct by the Village Defendants that prevented him from suing. The § 483-bb claim is therefore untimely as to the Village Defendants.

***F. Fraudulent Concealment Does Not Toll Any Claim***

No tolling doctrine rescues Plaintiff's claims against the Village Defendants. "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir.1999) (internal citation omitted); *see also Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir.2007) ("Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action") (internal quotation marks and citation omitted). Reasonable diligence is a prerequisite, and a plaintiff on inquiry notice cannot invoke the doctrine. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012); *see, e.g.*, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997) ("plaintiff who is not reasonably diligent may not assert fraudulent concealment") (internal quotation marks omitted); *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (noting with respect to equitable tolling under New York law that diligence is an "essential element of equitable relief") (citation omitted).

Plaintiff's multi-institutional concealment theory fails to include any allegations of concealment by the Village's Police Department and fails as to the Village on both elements (Compl., ¶ 82(a)). Alleged police failure to investigate is not an affirmative act directed at preventing Plaintiff from suing on a known claim, as distinct from the underlying wrong itself.

Moreover, Plaintiff cannot show the requisite diligence because he alleges injuries sustained decades before suit and identifies no obstacle the Village placed in the way of a timely action (Compl., ¶¶ 9, 13-14, 82). *See Ellul v. Congregation of Christian Bros*., 774 F.3d 791, 801 (2d Cir. 2014) (holding that even in an "extraordinary" case with human trafficking abuses that "are both unusual and egregious" . . . "they are not extraordinary in any way that would affect plaintiffs' ability to have inquired into and discovered the relevant facts long before" the statute of limitations period expired); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (holding that the District Court did not abuse its discretion in declining to equitably toll, on a fraudulent concealment theory, statute of limitations in connection with civil conspiracy to defraud and aiding and abetting fraud claims brought by buyer of allegedly counterfeit rare wine against auction house that sold wine; buyer was not prevented from discovering his claims, and did not act with reasonable diligence after receiving report questioning authenticity of wine). Tolling therefore cannot apply to any of Plaintiff's claims against the Village Defendants.

***G. The Discovery Rule Does Not Delay Accrual of the Federal Claims***

The 2025 Geer criminal proceedings do not reset accrual of the federal claims. Under "a discovery accrual rule . . . discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012); *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994). Plaintiff alleges he was subjected to abuse and not provided treatment during his 2000–2003 enrollment; those injuries were sustained then (Compl., ¶ 9). His assertion that he first learned the enterprise's true nature through the 2025 Geer proceedings identifies, at most, later discovery of a broader legal theory, not discovery of the injury itself (Compl., ¶ 81). Because the injuries underlying every federal count were sustained during

his enrollment, (Compl., ¶¶ 9, 13-14) the discovery rule does not delay their accrual, and those claims remain time-barred.

**POINT III**

**THE STATE-LAW CLAIMS ARE BARRED FOR FAILURE TO SERVE A NOTICE OF CLAIM**

The state-law causes of action (Counts VIII and XIII) independently fail because Plaintiff did not serve the requisite notice of claim that New York makes a condition precedent to any tort suit against a municipality. General Municipal Law § 50-e requires that, in any tort case where a notice of claim is a condition precedent to suit against a public corporation (or any officer, appointee, or employee thereof), the notice be served in accordance with the statute within 90 days after the claim arises. N.Y. Gen. Mun. Law § 50-e (McKinney). Such a notice a notice of claim "is a condition precedent to bringing a tort claim against a municipality." *Carter v. Broome Cnty.*, 394 F. Supp. 3d 228, 246 (N.D.N.Y. 2019) (internal quotation marks and citations omitted); *see Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789, 794 (2d Cir. 1999). A plaintiff must serve it within 90 days of when the claims arise. *Id.*

Federal courts entertaining state-law claims against a state's municipalities are obligated to apply that state's notice-of-claim provision. *Hardy*, 164 F.3d at 793; *Gandarilla v. Sanchez*, 2012 WL 3525607 (S.D.N.Y. Aug. 15, 2012) ("[f]ederal courts entertaining state-law claims against a state's municipalities are obligated to apply that state's notice-of-claim provision"). That obligation governs Plaintiff's state-law tort counts against the Village, including the NY Soc. Serv. § 483-bb, negligence, and negligence-per-se claims alike, each of which sounds in tort against a municipality. Plaintiff was thus required, but failed, to *both* serve a notice of claim, and allege compliance in the complaint. *Aggarwal v. N.Y.C. Health & Hosp. Corp*., 2000 WL 172787 (S.D.N.Y. Feb. 10, 2000); *see Perez v. City of New York*, 2007 WL 14486, at *10 (E.D.N.Y. Jan.

3, 2007) (holding that notice-of-claim requirements are "strictly construed" and non-compliance "ordinarily requires a dismissal," with the burden on plaintiff to demonstrate compliance.). The Complaint does not allege that Plaintiff ever served a notice of claim on the Village; its allegations are silent on the subject. Because a timely notice of claim is a condition precedent that a plaintiff must satisfy and plead, the absence of any such allegation is fatal to every state-law count asserted against the Village.

## POINT IV

## THE COMPLAINT FAILS TO STATE A CIVIL RICO CLAIM AGAINST THE VILLAGE DEFENDANTS

Even if the RICO counts were timely, they fail on the merits for multiple independent reasons. The Village cannot be liable in damages under civil RICO at all; the Complaint pleads no business-or-property injury, no operation or management of the enterprise, no predicate act by the Village, and no proximate cause; and the conspiracy count fails with the substantive claim. Any one of these defects requires dismissal of Counts I and II as against the Village Defendants.

### *A. Plaintiff Lacks RICO Standing Because She Alleges No Business-or-Property Injury*

Plaintiff lacks RICO standing because the losses he pleads are attenuated, personal-injury-derived harms, not the direct business-or-property injury the statute requires. 18 U.S.C. § 1964(c) confers a private right of action only on a person "injured in his business or property by reason of" a RICO violation, and by limiting recovery to business and property, the statute "implicitly excludes recovery for harm to one's person." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 593, 601 (2025), citing *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 350 (2016); *see Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 133, 137 (2d Cir. 2023) (holding that 18 U.S.C. § 1964(c) authorizes suit only for "'injur[ies] in his business or property' that are proximately caused by a

violation of one of RICO's substantive provisions," and it "implicitly excludes recovery for personal injuries.").

Although the Supreme Court in *Horn* held that a plaintiff "can seek damages for business or property loss regardless of whether the loss resulted from a personal injury," it left intact two independent limits that defeat Plaintiff's theory. *Med. Marijuana, Inc. v. Horn*, 604 U.S. at 601. First, 18 U.S.C. § 1964(c)'s "by reason of" language demands "some direct relation between the injury asserted and the injurious conduct alleged," and "[t]he key word is 'direct'; foreseeability does not cut it." *Id.* at 612. (quoting *Holmes v. Sec. Inv'r Prot. Corp*., 503 U.S. 258, 268 (1992), and *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010)). A causal theory that "requires moving 'well beyond the first step'" cannot satisfy RICO's direct-relationship requirement. *Id.* (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10, 12 (2010)). Second, *Horn* cautioned that "harm resulting from a single tort is not a ticket to federal court for treble damages" and that "'property' may not include every penny in the plaintiff's pocketbook." *Id.* at 613.

The losses Plaintiff pleads as RICO injury—destruction of the early years of his professional career and permanent depression in his earning capacity in his trade—are downstream financial *consequences* of injury he attributes to the racketeering activity and to injuries the perpetrators inflicted (Compl., ¶ 96). The Village's alleged connection to those losses runs through the independent conduct of the abusers and years of intervening events, well beyond the first step, and cannot satisfy RICO's direct-relationship requirement. (Compl., ¶ 96); *Med. Marijuana, Inc. v. Horn*, 604 U.S. at 612.

In similar cases, the Courts dismisses civil RICO claims brought by abuse victims. *See Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317, 329 (E.D.N.Y. 2012) (former students who alleged psychological injury and diminished educational and employment

opportunities flowing from a coach's abuse, and who sued the institution that allegedly concealed the abuse rather than the abuser, could not show that their injuries were directly caused by the predicate acts, whose targets were the paying parents and alumni); *see also Accord Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169–71 (S.D.N.Y. 2019) (no RICO standing where the claimed losses were caused by non-predicate conduct or only indirectly by the alleged racketeering). Thus, a plaintiff whose harm is "wholly derivative of harm to a third party" is "too remote, as a matter of law," to recover, and foreseeability does not substitute for a direct relation. *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999); *see also Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 182–83 (S.D.N.Y. 2020); *Hecht v. Commerce Clearing House*, 897 F.2d 21, 23–24 (2d Cir. 1990) ("[a] defendant is not liable for treble damages to everyone he might have injured by conduct other than that prohibited by RICO"). As such, Plaintiff has not pleaded RICO standing against the Village.

***B. A Municipality Cannot Be Liable Under Civil RICO***

The RICO counts also fail against the Village for the categorical reason that a municipality cannot be liable in damages under civil RICO. As the Second Circuit recently observed, "[s]ome district courts (and at least one treatise) endorse a rule that government entities, and their officers sued in their official capacities, cannot ordinarily be sued under RICO." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 124–25 (2d Cir. 2019). "'Over the decades since RICO was enacted, courts have declined to hold municipal corporations liable for civil RICO, providing two rationales: (1) that government entities are incapable of forming the mens rea necessary to commit a RICO predicate act, and (2) that taxpayers should not be made liable for extraordinary damages as a result of the actions of a few dishonest officials.'" *Winnie v. Sinagra*, No. 1:24-CV-00940 (BKS/PJE), 2025 WL 2391723, at *6 (N.D.N.Y. Aug. 18, 2025), quoting *Soybel v. City of New York,* No. 21-cv-1846, 2024 WL 5482682, at *7 (E.D.N.Y. Mar. 15, 2024). "[I]n *Gingras*, the Second Circuit

held that the first rationale was 'not persuasive . . . particularly given that private corporations are routinely held liable for damages under RICO.' " *Id*.

Although *Gingras* itself permitted a RICO claim seeking only injunctive relief, the court was explicit that the concern underlying the municipal-RICO cases is the appropriateness of imposing punitive-damages liability on taxpayers for a public official's misconduct, a concern it observed was "plainly not implicated where, as here, the relief sought is an injunction and not money damages." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 124–25 (2d Cir. 2019). That taxpayer-burden concern is squarely presented here, where Plaintiff seeks money damages rather than an injunction (Compl., ¶ 5). As *Cornetta v. Town of Highlands* confirms, the Second Circuit "has not necessarily disavowed the line of cases dismissing RICO claims for *damages* against municipalities." *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 181 (S.D.N.Y. 2020). Consistent with that approach, this Court applied the same rule earlier this year. *Dicenzo v. City of Saratoga Springs, No*. 1:24-CV-01513 (AMN/DJS), 2026 WL 698303 n6 (N.D.N.Y. Mar. 12, 2026) (holding that "[t]o the extent that the [municipality] Defendants are sued in their official capacities, Plaintiffs cannot enforce RICO against them because the municipality cannot form the requisite criminal intent to establish a predicate act"); *see also Soybel v. City of New York*, 2024 WL 5482682, at *7-*10 (E.D.N.Y. Mar. 15, 2024) ("no court has held a municipal entity liable for RICO treble damages"). Thus, this Court should dismiss both RICO counts.

### *C. Plaintiff Fails to Properly Plead the Elements of a RICO Claim*

Plaintiff's RICO claim independently fails because it fails to sufficiently plead the elements of a RICO claim. "To establish a RICO claim, a plaintiff must show: (1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). To establish a violation

of § 1962(c), in turn, a plaintiff must show that a person engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id*. Under § 1962(c), a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A RICO enterprise is a group associated for the common purpose of engaging in a course of conduct, shown through an ongoing formal or informal organization whose members function as a continuing unit. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 173 (2d Cir. 2004); *Caravella v. Hearthwood Homes Inc*., No. 05-CV-1529 DRH, 2007 WL 2886507, at *5 (N.D.N.Y. Sept. 27, 2007). Beyond proving an enterprise, a § 1962(c) plaintiff must show that each defendant participated in the operation or management of the enterprise itself – mere association is not enough, as even outsiders are liable only if they took some part in directing its affairs. 18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993); *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 174 (2d Cir. 2004).

The Complaint alleges that the enterprise operated "through the FFS institution as its primary vehicle," and that the school was owned, operated, and controlled by the Argiros defendants (Compl., ¶¶ 26, 49). As to the Village, it alleges only that the Village "knowingly protected the enterprise from law enforcement scrutiny" in exchange for financial and political benefits (Compl., ¶ 92(l)). Even accepted as true, those allegations describe an alleged outside protector of a school the Village did not own or staff, not a participant directing the school's affairs. Because the Complaint pleads no facts showing the Village had some part in *directing* the enterprise, the § 1962(c) conduct element is not satisfied. *Id.*

A defendant that merely assists, facilitates, or provides services to an enterprise—even services essential to it—does not thereby direct it, because "the test is not involvement but control." *Dep't of Econ. Dev. v. Arthur Andersen & Co*., 924 F. Supp. 449, 466 (S.D.N.Y. 1996). Allegations

that a defendant allowed a scheme to proceed, failed to notify the authorities of irregularities, and helped conceal it are "allegations of assistance to the alleged RICO enterprise, not direction of it," and do not satisfy § 1962(c). *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346–47 (S.D.N.Y. 1998); *see Wood v. Inc. Vill. of Patchogue*, 311 F. Supp. 2d 344, 358 (E.D.N.Y. 2004) (dismissing claims against village clerks who kept records and mailed notices for the alleged enterprise).

The RICO counts also fail because the Complaint attributes no predicate act to the Village. A civil RICO plaintiff must establish a pattern of racketeering activity, which requires identifying two or more related predicate crimes that amount to or threaten continued criminal activity. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593; *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). The predicate acts must be offenses enumerated in 18 U.S.C. § 1961(1); state-law crimes qualify only where they are punishable by more than a year and which involve "murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical." *Wood v. Inc. Vill. of Patchogue of New York*, 311 F. Supp. 2d 344, 358 (E.D.N.Y. 2004).

For example, in *Dicenzo v. City of Saratoga Springs*, No. 1:24-CV-01513 (AMN/DJS), 2026 WL 698303 (N.D.N.Y. Mar. 12, 2026), this Court dismissed a § 1962(c) claim against a city and officials because acts like suppressing and false-certifying records and steering benefits are not § 1961(1) predicates, and mail and wire fraud was not pleaded with Rule 9(b) particularity.

Here, the predicate acts the Complaint pleads (sex trafficking, forced labor, and mail and wire fraud) are alleged generally and vaguely against *all* defendants; however, there are no specific allegations that apply to the Village Defendants within them (Compl., ¶ 93). The Complaint in totality pleads no *specific* § 1961(1) predicate act committed by the Village. As relevant to the Village, it only alleges the Village "knowingly protected the enterprise from law enforcement

scrutiny" and protecting the enterprise from scrutiny is not an offense enumerated in § 1961(1). (Compl., ¶ 92(l)); *Wood v. Inc. Vill. of Patchogue of New York*, 311 F. Supp. 2d at 358. Because no qualifying predicate act by the Village is pleaded, the Complaint fails to allege that the Village engaged in a pattern of racketeering activity, and both RICO counts fail on this ground as well.

To the extent that Plaintiff is treating the Village's alleged inaction as racketeering, the Second Circuit has held that "continued silent concealment of assets is not a predicate act." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004). Further, RICO imposes no civil aiding-and-abetting liability, so a defendant that at most helped or failed to stop the enterprise cannot be held liable for another's predicate acts. *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F. Supp. 449, 475–77 (S.D.N.Y. 1996) (a defendant's failure to investigate suspicions does not establish RICO participation); *see also Winnie v. Sinagra*, No. 1:24-CV-00940 (BKS/PJE), 2025 WL 2391723 (N.D.N.Y. Aug. 18, 2025) (holding that coercion, "suppressing information," and "false, misleading, incomplete" reports are not RICO predicate acts).

Even assuming a qualifying injury and predicate act (which is not pleaded), the RICO counts fail for lack of proximate cause. Section 1964(c)'s "by reason of" language demands "some direct relation between the injury asserted and the injurious conduct alleged"; "[t]he key word is 'direct'; foreseeability does not cut it"; and a theory that "requires moving 'well beyond the first step'" cannot meet the requirement. *Med. Marijuana, Inc. v. Horn*, 604 U.S. at 612. (*quoting Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992), and *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10, 12 (2010)). In other words, "the RICO pattern or acts must *proximately* cause plaintiff's injury" and that factual "'but for' causation" alone "is not sufficient." *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) (*citing Sperber v. Boesky*, 849 F.2d 60, 64 (2d Cir. 1988)).

The Complaint alleges that the abuse and failure to provide treatment were carried out by agents and employees of the school (Compl., ¶¶ 13-16, 19). The Village's alleged role, by contrast, is that it "knowingly protected the enterprise" (Compl., ¶ 92(l)). Any causal path from that alleged conduct to Plaintiff's later economic losses runs through the independent criminal conduct of the abusers and years of intervening events, a chain that moves far beyond the first step and depends on foreseeability rather than directness. (Compl., ¶ 96); *Med. Marijuana, Inc. v. Horn*, 604 U.S. at 612. The proximate-cause requirement is simply not satisfied.

Further, where significant time and intervening events separate the alleged wrong from the loss, proximate cause fails: "[w]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions," and the longer the interval, the greater the likelihood "that the loss is attributable to events occurring in the interim." *First Nationwide Bank v. Gelt Funding Corp*., 27 F.3d 763, 769, 772 (2d Cir. 1994); *see Holmes v. Sec. Inv'r Prot. Corp*., 503 U.S. 258, 271-72 (1992) (the general tendency of the law is "not to go beyond the first step"). Plaintiff's 2026 economic losses, arising two decades after the alleged conduct and only through the abusers' independent criminal acts, are exactly the kind of remote harm that makes these allegations beyond RICO's reach.

Finally, to the extent the RICO counts rest on mail and wire fraud, they fail for lack of particularity. Allegations of fraudulent predicate acts are subject to the heightened pleading requirements of Rule 9(b), and the plaintiff must state the specifics of the fraud with particularity and plead facts giving rise to a strong inference of fraudulent intent. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d at 178-80. Even matters peculiarly within a defendant's knowledge, pleaded on information and belief, may not be pleaded "lacking any detail at all" and must be

accompanied by a statement of the facts on which the belief is based. *Id.* at 179. (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). Here, the mail and wire-fraud predicates concern the school's transmission of recruitment materials and its collection of tuition from families (Compl., ¶ 93(c)). The Complaint identifies no fraudulent statement made or transmitted by the Village and pleads no particulars (no speaker, content, time, place, or manner) of any fraud attributable to it (Compl., ¶ 93(c)). Such conclusory allegations of scienter without the necessary minimum factual basis cannot supply a fraud predicate, so the fraud predicates cannot support a RICO claim against the Village. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d at 167.

### *D. The RICO Conspiracy Claim Fails*

A RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) is "entirely dependent on" the substantive RICO claim and must be dismissed with it. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244-45 (2d Cir. 1999). A conspiracy complaint must "allege facts implying any agreement involving each of the defendants to commit at least two predicate acts"; a bare allegation that the defendants "conspired" will not do. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). Plaintiff's RICO claim must therefore be dismissed for this reason alone.

Here, the Complaint pleads no facts showing the Village agreed to further the trafficking or forced-labor scheme. It alleges generically that "[e]ach Defendant agreed and conspired," a conclusory assertion advanced against all defendants without particulars specific to the Village. (Compl., ¶ 99). Such generic averments, unsupported by facts showing the Village's assent or its status in the enterprise, cannot sustain the claim, because conclusory allegations of scienter without the necessary minimum factual basis are insufficient. This Court has dismissed a RICO conspiracy claim for precisely the failure present here – the absence of any "knowing agreement to commit

predicate acts." *Boucher v. Sears*, No. 89-CV-1353, 1995 WL 283742 (N.D.N.Y. May 8, 1995). A generalized allegation that each defendant "agreed" is insufficient because it fails to put any defendant on notice of which predicate acts it is alleged to have agreed to commit. *United States v. Priv. Sanitation Indus. Ass'n*, 793 F. Supp. 1114 (E.D.N.Y. 1992); *Laverpool v. N.Y.C. Transit Auth.*, 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991); *Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006). Therefore, the RICO conspiracy claim must be dismissed as against the Village Defendants.

## POINT V

## THE COMPLAINT FAILS TO STATE A TRAFFICKING VICTIMS PROTECTION ACT CLAIM

The Complaint fails to properly plead the elements of the TVPRA claim against the Village Defendants and must be dismissed.

### *A. Plaintiff Fails to Plead Participation in a Venture and Knowing Benefit*

Plaintiff's 18 U.S.C. § 1595 beneficiary claims fail because the Complaint pleads neither participation in the trafficking venture nor a knowing benefit from that participation. To plead beneficiary liability under 18 U.S.C. § 1595(a), a plaintiff must plausibly allege, among other elements, that the defendant participated in the venture that carried out the violation; that it knew or should have known of the violation; and that it knowingly benefited from its participation. *Mueller v. Deutsche Bank Aktiengesellschaft*, 185 F.4th 307, 312 (2d Cir. 2026). The Second Circuit construes "participation in a venture" to require taking part in an enterprise involving elements of risk or gain, and that it "requires more than" providing services at arm's length. *Id.* at 313, 315. Allegations establishing "little more than an arm's-length business relationship" and "the routine provision of ordinary, nondifferentiated" services do not show a shared enterprise or common undertaking. *Id.* at 314.

The Complaint only alleges that the Village received generalized "financial and political benefits" from the Argiros family (Compl., ¶¶ 43, 92(l)). Those benefits are the diffuse economic effects of a family's dominance of a small village's commerce, not an interest in, control over, or common purpose with the trafficking venture (Compl., ¶¶ 53-56).

Further, the Southern District in *Levin v. Sarah Lawrence College*, dismissed a TVPRA claim against a school because: "to state a claim for beneficiary liability under the TVPRA, the defendant must have received some benefit," and a generalized benefit that bore no "relationship to the alleged … trafficking venture" does not suffice. *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679 (S.D.N.Y. 2024); *see also A.A. v. Omnicom Grp.*, 834 F. Supp. 3d 419 (S.D.N.Y. 2026). Here, too, the Complaint alleges no benefit to the Village that bore any relationship to Plaintiff's trafficking. Count IV of the Complaint therefore must be dismissed.

## POINT VI

## PLAINTIFF FAILS TO PROPERLY PLEAD A 42 U.S.C. SECTION 1983 CLAIM

Plaintiff's 42 U.S.C. § 1983 claim fails because the Village Defendants did not have any duty to protect Plaintiff from harm, and the Complaint pleads no official policy or custom, as required for a Section 1983 claim.

### *A. The Village Defendants Did Not Owe Plaintiff Any Duty to Protect Against Private Harm*

Plaintiff's 42 U.S.C. § 1983 claim fails on the settled rule that the Constitution imposes no affirmative duty to protect against private violence. *DeShaney v. Winnebago County Department of Social Services* holds that the Due Process Clause does not impose an affirmative duty on the State to protect individuals from private violence. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). The Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security," so "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due

Process Clause." *Id.* at 195, 197. Plaintiff's claim is precisely such a failure-to-protect claim. The abuse was perpetrated by school staff, not the Village (Compl., ¶¶ 13-16). The Village is alleged to have failed to investigate conditions at FFS (Compl., ¶ 144).

The recognized exception imposes an affirmative duty of protection only "when the State takes a person into its custody and holds him there against his will." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. at 199. This exception does not apply here: Plaintiff was placed with the school by his mother, and the Complaint alleges no custodial relationship between Plaintiff and the Village (Compl., ¶¶ 9, 139). *See Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008); *Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist.*, 89 F. Supp. 3d 450, 458 (E.D.N.Y. 2015) ("courts are generally in agreement that the 'special relationship' doctrine does not apply to a school setting. . . [plaintiff's] status as a student did not put her in the custody of the State at the time of the alleged sexual assault, foreclosing any reliance on the 'special relationship' exception to *DeShaney*"). Because the Village had no constitutional duty to protect Plaintiff from private abuse, the § 1983 claim fails at its foundation. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. at 201.

The Second Circuit has repeatedly held that affirmative conduct that "creates or increases the risk of private violence" is actionable, but passive failures to act are not. *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009). As the Court put it, "an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process clause," whereas "an allegation that the officers in some way had assisted in creating or increasing the danger to the victim would indeed implicate those rights." *Id.* (quoting *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993)). In a similar case, *Reid ex rel. Roz B. v. Freeport Public School District*, the Court held that "the state-created danger theory does not impose a duty on [schools] to protect students from assaults by other

students, even if Defendants knew or should have known of the danger," because liability attaches only where the entity "acted affirmatively to put [the victim] in danger" and typically requires that a state agent had "a particular relationship with the perpetrator." *Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist.*, 89 F. Supp. 3d 450, 459 (E.D.N.Y. 2015); *see Doe v. Town of Greenwich*, 422 F. Supp. 3d 528, 540 (D. Conn. 2019) (the plaintiff alleged police colluded with a school to suppress sexual-assault complaints and sweep allegations "under the rug." The court dismissed the substantive-due-process claim as "precisely the type of passive inactivity" that cannot support a state-created danger); *M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 431-32 (S.D.N.Y. 2017) (failure to investigate child-abuse tip-line reports "does not rise to the level of a violation of substantive due process").

The Complaint alleges that the Village's police failed to investigate conditions at the school (Compl., ¶ 144). Even the alleged failure to investigate is not affirmative conduct that created or increased the danger Plaintiff faced from the school, and the Complaint does not allege that the Village acted in concert with the abusers (Compl., ¶ 139). Thus, because the Village had no constitutional duty to protect Plaintiff from private abuse, the § 1983 claim must be dismissed.

***B. The Complaint Pleads No Monell Policy or Custom***

Initially, if no constitutional violation is pleaded, the Court need not address the municipal Defendants' potential liability under *Monell* with respect to the Section 1983 claims. *Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist.,* 89 F. Supp. 3d 450, 460 (E.D.N.Y. 2015). Even if a constitutional violation were assumed (it should not be), the Complaint pleads no policy or custom. Under *Monell v. Department of Social Services*, "a municipality cannot be held liable under § 1983 on a respondeat superior theory," and is liable only "when execution of a government's policy or custom … inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

A plaintiff must therefore plead an official policy or custom that causes a denial of a constitutional right. *Pisello v. Town of Brookhaven*, 933 F. Supp. 202, 209 (E.D.N.Y. 1996). A theory based on an alleged custom of inaction requires a stringent showing of deliberate indifference, "a conscious choice," not mere negligence – and "isolated acts" by non-policymaking employees do not establish a custom unless the conduct is "so persistent" that policymakers "must have been aware" of it. *Jones v. Town of E. Haven*, 691 F.3d 72, 80-81 (2d Cir. 2012).

The Complaint satisfies none of these requirements. It fails to allege any policy or custom, official or unofficial, carried out by the Village. (Compl., ¶ 139). Plaintiff's 42 U.S.C § 1983 claim therefore fails.

## POINT VII

## THE STATE-LAW CLAIMS FAIL TO STATE A CLAIM

### *A. The Social Services Law § 483-bb Claim Does Not Apply and Fails to State a Claim*

Initially, the Social Services Law § 483-bb claim independently fails because the statutory civil remedy does not reach the conduct alleged. Plaintiff's Social Services Law § 483-bb claim depends on a civil cause of action that the Legislature created effective January 19, 2016 (Compl., ¶ 120). A newly created statutory civil remedy is presumed to operate prospectively and does not reach conduct completed before its enactment absent a clear legislative statement of retroactive intent. *See S.J. v. Choice Hotels Int'l*, 473 F. Supp. 3d 147, 156–57 (E.D.N.Y. 2020) (holding that § 483-bb(c)'s civil right of action (effective Jan. 19, 2016) does not apply retroactively to pre-enactment trafficking conduct, applying the presumption against retroactivity and holding the "remedial statute" exception "does not apply to statutes creating new rights and remedies where none previously existed"); *see also Velez v. Sanchez*, 693 F.3d 308, 324–25 (2d Cir. 2012) (holding that the parallel federal TVPRA civil remedy does not apply retroactively because it "increases a party's liability for previously occurring conduct.").

The conduct the Complaint attributes to the Village arises from Plaintiff's 2000–2003 enrollment (Compl., ¶ 9). Because that conduct predates the Social Services Law § 483-bb civil remedy by more than a decade, and nothing in the statute clearly manifests an intent to reach pre-enactment conduct by a non-perpetrator municipality, the claim against the Village is not cognizable under the statute.

In any event, New York's Social Services Law § 483-bb claim fails on the merits for the same reasons its federal counterpart does. Section 483-bb affords a trafficking victim a civil action against one who knowingly advances or profits from the trafficking, the state analogue to federal beneficiary liability under 18 U.S.C. § 1595. The federal authority construing that parallel benefit-and-participation standard is instructive here. Federal courts construing the parallel TVPRA benefit standard require the same: in *Levin v. Sarah Lawrence College*, the court explained that "to state a claim for beneficiary liability under the TVPRA, the defendant must have received some benefit," and that an institution's generalized benefit bearing no "relationship to the alleged … trafficking venture" does not suffice. *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d at 679. And the Second Circuit requires "participation in a venture," meaning taking part in the enterprise, not a mere passive or arm's-length relationship. *Mueller v. Deutsche Bank Aktiengesellschaft*, 185 F.4th at 313.

The Complaint pleads only that the Village received generalized "financial and political benefits" from the Argiros family (Compl., ¶¶ 43, 92(l)). It does not allege any benefit to the Village that bore a relationship to Plaintiff's trafficking, or any conduct by which the Village took part in the venture; the alleged benefits are the diffuse effects of the Argiros family's concentration of the Village's commerce. (Compl., ¶¶ 53-56). A municipality alleged only to have failed to police

a private school has neither "advanced" the trafficking nor "profited" from it within the meaning of Social Services Law § 483-bb, and the state trafficking count fails on the merits.

### *B. The Negligence Claim Fails Because No Special Duty Is Owed Under the Public Duty Doctrine*

The negligence count fails because the Complaint pleads no special duty. Although "a municipality owes a general duty to the public at large to furnish police protection, this does not create a duty of care running to a specific individual sufficient to support a negligence claim, unless the facts demonstrate that a special duty was created." *Valdez v. City of New York*, 18 N.Y.3d 69, 75 (2011); *see Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000); *see also Ferreira v. City of Binghamton*, 975 F.3d 255, 291 (2d Cir. 2020) (New York's public duty doctrine, where a municipality performs a governmental function such as policing, "to sustain liability in negligence against a municipality, the plaintiff must show that the duty breached is greater than that owed to the public generally.").

A special duty arises in only three situations: where the plaintiff belonged to a class for whose benefit a statute was enacted, where the municipality voluntarily assumed a duty to the plaintiff beyond that owed to the public, or where it took positive control of a known and dangerous safety condition. *Ferreira v. City of Binghamton*, 975 F.3d at 281. This approach "permits recovery against the government only in a narrow set of circumstances." *Howell v. City of New York*, 39 N.Y.3d 1006 (2022).

The Complaint pleads none of the special-duty elements as to the Village. It alleges generalized failures of police protection, not any promise or affirmative undertaking to Plaintiff individually, no direct contact between Village agents and Plaintiff on his behalf, and no justifiable reliance. (Compl., ¶ 144). Because a special duty is "an essential element of the negligence claim itself, which the plaintiff must prove," and none is pleaded, the negligence-per-se claim must be

dismissed. *Ferreira v. City of Binghamton*, 975 F.3d at 284 (quoting *Applewhite v. Accuhealth*, Inc., 21 N.Y.3d 420, 426 (2013)).

### *C. Governmental-Function Immunity Bars the Negligence Claim*

The negligence count is independently barred by governmental-function immunity. New York shields municipalities from tort liability for discretionary governmental acts. As the Court of Appeals held, "discretionary municipal acts may never be a basis for liability." *McLean v. City of New York*, 12 N.Y.3d 194, 202 (2009) (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983), and *Lauer v. City of New York*, 95 N.Y.2d 95, 99-100 (2000)). The Court has long held that "when official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice." *Id.* (quoting *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983)). A municipality thus "generally enjoy[s] immunity from liability for discretionary activities they undertake through their agents … except when plaintiffs establish a 'special relationship.'" *McLean v. City of New York*, 12 N.Y.3d 194 (*quoting Kovit v. Estate of Hallums*, 4 N.Y.3d 499, 505 (2005)).

The conduct the Complaint challenges—the Village police's failure to investigate conditions, and whether to involve child-protective authorities—is the paradigm of discretionary law-enforcement judgment (Compl., ¶ 144). Immunity applies to such determinations regardless of whether they were exercised wisely, and no special relationship is pleaded, as shown above. The negligence count must therefore be independently dismissed on this basis.

### *D. There Is No Private Right of Action for Failure to Report*

The negligence-per-se count fails because the Social Services Law creates no private right of action against a municipality for failure to report. In *McLean v. City of New York*, the Court of Appeals held that the Social Services Law creates no private right of action against government

entities, concluding that recognizing such a right "would be inconsistent with the legislative scheme" because the statute establishes its own enforcement mechanisms and "there is no statutory provision for governmental tort liability." *McLean v. City of New York*, 12 N.Y.3d at 200. The Court reasoned that the Legislature "would have created a private right of action against erring government agencies if it found it wise to do so." *Id.* at 201.

The same reasoning forecloses Plaintiff's negligence-per-se theory premised on the mandatory child-abuse reporting provisions of the Social Services Law. Those provisions impose reporting duties on designated individuals, including teachers, school officials and personnel, social workers, child care workers, and law-enforcement officers. (Compl., ¶ 142). They impose no reporting duty on the Village as an entity, and supply no private right of action against a municipality for a failure to report. Plaintiff's theory is that the Village's police systemically failed to report, but a negligence-per-se label cannot manufacture the municipal liability the Legislature declined to create. (Compl., ¶ 145)

## CONCLUSION

For the foregoing reasons, the Village of Hancock and the Hancock Village Police Department respectfully request that the Court dismiss with prejudice all claims asserted against them (Counts I, II, IV, VIII, XII, and XIII), dismiss the Hancock Village Police Department as a non-suable entity, and grant such other and further relief as the Court deems just and proper.

Dated: October 27, 2026
Albany, New York

WHITEMAN OSTERMAN & HANNA LLP

By: Oriana Kiley

Oriana L. Kiley, Esq.
Anna V. Seitelman, Esq.
*Attorneys for Defendants*
*The Village of Hancock and the Hancock Village Police Department*
One Commerce Plaza
Albany, New York 12260
(518) 487-7600
okiley@woh.com
aseitelman@woh.com